Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. On 17 December 1991 the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer at the time of the accident.
3. National Union Fire Insurance Company was the compensation carrier on the risk.
4. The parties are properly denominated in the caption, all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
5. The plaintiff sustained a specific traumatic incident on 17 December 1991 while working for defendant-employer. Thereafter, the plaintiff was paid temporary total disability benefits at her compensation rate from 30 December 1991 and she is continuing to receive weekly benefits pursuant to a Form 21 Agreement which has not been approved by the Industrial Commission.
6. Plaintiff's average weekly wage is $97.02 and her compensation rate is $64.68 per week.
7. The parties also stipulated to 60 pages of medical records.
********
The Full Commission adopts the findings of fact found by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is 61 years old and has a twelfth grade education. Prior to going to work for defendant-employer in April 1990 as a part-time cashier, she performed clerical, accounting and bookkeeping work for 27 years. Prior to her injury in December 1991 she had problems with her left leg associated with phlebitis.
2. Plaintiff injured her back on 17 December 1991 lifting a case of motor oil at the cash register. Following the injury Dr. Goodno treated conservatively and kept plaintiff out of work, but she experienced little relief. CT scan on 1 February 1992 revealed mild disc bulging at L3-4, L4-5, and L5-S1. On 24 February 1992 plaintiff saw Dr. Goodno complaining of ongoing low back pain despite rest, with positive straight leg raising and mild hypoesthesia of the left foot. Later that same day she experienced a severe exacerbation of her ongoing pain when she turned and twisted while sitting. This exacerbation, which prompted admission to Carteret General Hospital, was a direct and natural consequence of the injury of 17 December 1991 and causally related thereto. As a result of the injury of 17 December 1991 plaintiff underwent a lumbar laminectomy and fusion with internal plate fixation in March 1992 by Dr. Wilfong.
3. Following the surgery plaintiff continued under Dr. Wilfong's care with complaints of unremitting pain in her hips and legs. Dr. Wilfong eventually removed the screws from plaintiff's back in December 1993. At that point in time plaintiff was the best Dr. Wilfong had ever seen her, yet she still experienced terrible pain and Dr. Wilfong didn't know if plaintiff could even return to part-time work at that point.
4. Further studies in early 1994 revealed a bulging disc at L3-4 for which plaintiff underwent another laminectomy and diskectomy on 5 April 1994. This surgery was unrelated to the injury of 17 December 1991.
5. On 13 May 1994 plaintiff underwent an independent medical exam by Dr. Whitehurst at the request of defendants. Plaintiff had already undergone an IME at defendants' request in October 1993 by Dr. Scontsas, who diagnosed chronic pain, felt her prognosis was poor, and did not expect her to return to work. Dr. Whitehurst recommended further surgery to reconstruct the back, or participation in a physical therapy program through his office for one to six weeks, after which he anticipated plaintiff should be allowed to return to sedentary or very light work. Plaintiff attended the physical therapy program, but discontinued the program after only 3 weeks at the recommendation of the physical therapist because of lack of progress and continued reports of back pain.
6. Despite plaintiff's inability to complete the physical therapy, Dr. Whitehurst approved plaintiff to return to work for defendant-employer for 8 hours a day as a fitting room attendant, a position which required essentially no lifting and allowed sitting and standing as necessary.
7. Plaintiff returned to work for defendant-employer as a fitting room attendant on 21 June 1994. After only two hours work plaintiff reported severe back pain to her supervisor. She was able to work only two hours on her next scheduled work day, after which she informed defendant-employer that she would be unable to continue in that capacity because of the level of pain. The fitting room attendant position was not suitable to plaintiff's capacity.
8. Because of her back injury, plaintiff is unable to drive and experiences pain with stooping, bending, walking, sitting, kneeling and standing.
9. Plaintiff has reached maximum medical improvement.
10. As a result of the injury of 17 December 1991, and taking into account her advanced age and limited clerical work experience which would require constant sitting, plaintiff has permanently lost the capacity to earn the same wages she was earning at the time of the injury in the same employment and further lost the capacity to earn any wages in any employment for which she is otherwise qualified.
********
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury of 17 December 1991 plaintiff is permanently and totally disabled and is therefore entitled to lifetime benefits pursuant to N.C. Gen. Stat. § 97-29. Her claim for ongoing compensation is not barred by the provisions of N.C. Gen. Stat. § 97-32, inasmuch as the job defendant-employer procured for her was not suitable to her capacity.
2. Defendants shall not be responsible for paying for the surgery plaintiff underwent in April 1994, inasmuch as that procedure was not causally related to the injury of 17 December 1991.
********
Based upon the foregoing stipulations, findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. Defendants shall continue to pay plaintiff weekly workers' compensation benefits for the remainder of her lifetime, unless she sooner undergoes a change of condition for the better, subject to the attorney fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury of 17 December 1991 and all future medical expenses to the extent such treatment tends to effect a cure, give relief, or lessen the period of disability.
3. Plaintiff's attorney is entitled to a fee of 25 percent of the compensation awarded herein, which amount shall be paid by forwarding every fourth compensation check directly to Mr. Weeks.
4. Defendants shall pay the costs due this Commission.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER
BSB:md